

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**************************************************************************

|  |  |  |
|---|---|---|
| ROGER D. WALDNER, | * | CIV. 10-4056 |
|  | * |  |
| Plaintiff, | * |  |
|  | * |  |
| vs. | * |  |
|  | * |  |
| NORTH AMERICAN TRUCK & | * | ORDER |
| TRAILER, INC.; SIOUX FALLS | * |  |
| KENWORTH, INC.; MID-STATES | * |  |
| ACCEPTANCE CORP; CAROLINA | * |  |
| COMMERCIAL TRUCK SALES, LLC; | * |  |
| SIOUX FALLS TRAILER SALES, INC.; | * |  |
| WILLIAM A. RUSH; | * |  |
| KAREN A. RUSH; | * |  |
| FREDERICK C. LOVRIEN, M.D.; | * |  |
| ALLISON BOADE, M.D.; | * |  |
| KATHY WATKINS; | * |  |
| KATHY WILLIAMS; | * |  |
| KAREN SNOW; | * |  |
| MARCY THORMODSGAARD; | * |  |
| KERRY SCHMIDT; | * |  |
| RICHARD V. LONG; | * |  |
| PARLIMAN & PARLIMAN; | * |  |
| CADWELL, SANFORD, DEIBERT | * |  |
| & GARRY; BRETT A. LOVRIEN; | * |  |
| WILLEY, O'BRIEN & HANRAHAN, LC; | * |  |
| RENEE K. HANRAHAN; | * |  |
| BREIT LAW OFFICES PC; | * |  |
| GLENN J. BOOMSMA; | * |  |
| BRENDTRO LAW OFFICE; | * |  |
| ZIMMER, DUNCAN & COLE, LLP; | * |  |
| DANIEL K. BRENDTRO; | * |  |
| RICE & EWINGER; | * |  |
| CURT R. EWINGER; | * |  |
| SUTTON LAW OFFICES; | * |  |
| TERRY SUTTON; | * |  |
| BARON, SAR, GOODWIN, GILL | * |  |
| & LOHR; A. FRANK BARON; | * |  |
| PACCAR, INC.; VOLVO TRUCK | * |  |

CORPORATION; UTILITY TRAILER　*
MFG.; FISHBACK FINANCIAL　*
CORPORATION; FIRST BANK &　*
TRUST, formerly First National Bank;　*
WALLWORK FINANCIAL　*
CORPORATION; WELLS FARGO　*
BANK NORTH DAKOTA, NA;　*
US BANCORP LEASING AND　*
FINANCIAL; EIDE BAILLY, LLP;　*
McGLADREY & PULLEN, LLP;　*
EAST VANDER WOUDE & GRANT　*
CO. PC; THURMANB, COMES,　*
FOLEY & CO., LLP; UTILITY　*
TRAILER SALES OF CENTRAL　*
CALIFORNIA, INC.;　*
WARNER TRUCK CENTER OF UTAH;　*
JOHN HAUKNECHT;　*
DENTON HABER;　*
ACTION CARRIER, INC.;　*
MICHAEL L. WALSH;　*
WENDY L. WALSH;　*
GALLEY W. SMITH;　*
BRADLEY HARTKE;　*
DOUGLAS HARTKE;　*
COMMUNITY BANK AT WINSLOW,　*
formerly Winslow-Warren State Bank;　*
ROBERT LYVERS;　*
TERRI ROSE;　*
VAL GUENZLER;　*
CHEYANNE DOYLE;　*
SCOTT D. WIELE;　*
JACK MAKLER;　*
MARK FARIS;　*
DONALD WEBB;　*
PETER HUESER;　*
MARK THOMAS GEIS;　*
JAMES SKRZYPEK;　*
RICHARD D'MARTINI;　*
TIMOTHY MUELLER;　*
JANE DOES 1-14;  JOHN DOES 1-14;　*
ROBERT THOMAS MOORE; and　*
A. THOMAS POKELA,　*
　*

2

Defendants.                              *
                                          *
*****************************************************************************

Multiple defendant move to dismiss plaintiff's claims against them pursuant to various

sections Federal Rules of Civil Procedure 12 and 56. Plaintiff, Roger D. Waldner, resists.

### FACTUAL BACKGROUND

The general, pertinent facts to this order, in the light most favorable to Waldner, the non-

moving party, are as follows:

In 2002, Waldner initiated bankruptcy proceedings for H&W Motor Express Company,

his solely-owned corporation. *See In re H & W Motor Express Co.*, No. 02-2017 (Bankr. N.D.

Iowa June 12, 2002). After the close of those proceedings, numerous creditors filed state court

lawsuits in Iowa and South Dakota against Waldner alleging that he violated various contracts. In

2007, Waldner pled guilty to making false statements during H&W's 2002 federal bankruptcy

action and was sentenced to ten years in prison. *See United States v. Waldner*, 564 F. Supp. 2d

911 (N.D. Iowa 2008). Waldner is currently incarcerated in federal prison.

This case is part of an on-going dispute between Waldner and William Rush and their

respective business entities. Sioux Falls Kenworth Inc. is the wholly-owned subsidiary of North

American Truck & Trailer. Rush is the majority shareholder and chief executive officer of North

American Truck & Trailer.

In this action, Waldner filed a pro se complaint alleging that beginning in 2001, William

Rush engaged in a broad conspiracy with a multitude of lawyers, accountants, financial

institutions, corporations, and federal prisoners to defraud him. Based on this alleged fraud,

Waldner asserts civil violations of the Racketeer Influenced and Corrupt Organizations Act

3

(RICO) against over 60 different defendants. For clarity, the Court will discuss the individual facts pertaining to each defendant in connection with that defendant's motion.

## I.     Standard of Review

Most defendants move to dismiss Waldner's claims against them pursuant to Rule 12(b)(6) or move for judgment on the pleadings under Rule 12(c). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this plausibility standard, the complaint must contain "more than labels and conclusions." *Id.* at 555. Instead, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

A complaint must only present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must be liberally construed in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2006). The court must accept the facts alleged as true, even if doubtful. *Twombly*, 550 U.S. at 555. Thus, a well-pleaded complaint may proceed even if it appears that recovery is very remote or unlikely. *Id.*; *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed. The standard for a Rule 12(c) motion is effectively the same as that for a Rule 12(b)(6) motion. *Westcoot v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (noting that the "distinction [between Rule 12(c) and 12(b)(6)] is purely formal,

4

because we review this 12(c) motion under the standard that governs 12(b)(6) motions" (citations omitted)).

## II.     Judicial Notice

Defendants Daniel Brendtro and Brendtro Law Office (Brendtro) and Zimmer, Duncan, Cole LLP (ZDC) move for judicial notice of various documents related to the state court actions involving Waldner. Dockets 30 and 58. Other defendants request judicial notice of the state court documents from the actions involving Waldner. Dockets 33, 53, 77, 181, and 186.

If a party requests judicial notice of adjudicative facts, the court, if supplied with the necessary information, must take judicial notice of facts that can be accurately determined by looking to an independent source. *See* Fed. R. Evid. 201(c) ("A court shall take judicial notice if requested by a party and supplied with the necessary information".); *id.* at 201(a)(2) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *see also Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 494 n.4 (7th Cir. 2011) (granting a motion to take judicial notice of relevant state court documents).

When ruling on a motion to dismiss under Rule 12(b)(6), courts can consider matters of public record in addition to the complaint's factual allegations. *Illig v. Union Elec. Co.*, ___ F.3d ____, No. 10-3488, 2011 WL 3820865, at *4 (8th Cir. Aug. 31, 2011) ("In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.' " (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010))); *see also State ex rel. Nixon v. Couer D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999) (reasoning that "[s]ome materials that are

5

part of the public record or do not contradict the complaint may be considered by a court in

deciding a Rule 12(b)(6) motion to dismiss." (citations omitted)). The consideration of judicially

noticed facts, such as public court records, does not convert a motion to dismiss into one for

summary judgment. *State ex rel. Nixon*, 16 F.3d at 1107.

Waldner agrees that judicial notice of the state court documents is proper. *See* Docket 262

at 20 ("Plaintiff has not objected to the Judicial Notice Request and understands the Court must

review the other Cases submitted for Judicial Notice . . . ."). The Court will take judicial notice

of the state court documents that are part of the public record, as set forth in Dockets 30, 33, 53,

58, 77, 181, and 186. Brendtro and ZDC's motion for judicial notice (Dockets 30 and 58) are

granted.

### III.   Statute of Limitations

Waldner asserts violations of 18 U.S.C. § 1964(c) against defendants, which creates a

private civil cause of action for RICO violations. While the civil RICO statute does not contain a

statute of limitations, the Supreme Court has reasoned that civil RICO actions are subject to a

four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143,

156 (1987) (reasoning that the Clayton Act's four-year statute of limitations applies to civil

RICO actions).

There has been significant litigation over the rules used to determine when a civil RICO

claim accrues for purposes of the statute of limitations. Over the years, the Circuit Courts of

Appeal have announced four accrual rules: (1) the injury and pattern discovery rule; (2) the last

predicate act rule; (3) the injury discovery rule; and (4) injury occurrence rule. Paul Batista,

*Statute of Limitations Defenses: General Four-Year Rule*, Civ. RICO Prac. Manual § 4.13

(2011). In *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997), the Supreme Court "cut the possibilities by one, in rejecting the last predicate act rule." *Rotella v. Wood*, 528 U.S. 549, 554 (2000) (citing *Klehr*, 521 U.S. 179). The Court also eliminated the injury and pattern discovery rule, *id.*, which the Eighth Circuit had adopted earlier. *See Granite Falls Bank v. Hendrickson*, 924 F.2d 150, 154 (8th Cir. 1991) (adopting the injury and pattern discovery rule). In *Rotella*, the Supreme Court reasoned that it did "not, however, settle upon a final rule," 528 U.S. at 554 n.2, which leaves the injury discovery rule or the injury occurrence rule as possible rules.

It appears that the Eighth Circuit has not addressed whether the injury discovery rule or the injury occurrence rule is the appropriate rule for determining when the statute of limitations accrues for a civil RICO action. But in *Wal-Mart Stores v. Watson*, 94 F. Supp. 2d 1027 (W.D. Ark. 2000), the District Court for the Western District of Arkansas addressed this issue. After thoroughly analyzing Supreme Court precedent and the Eighth Circuit's reasoning in *Granite Falls Bank*, 924 F.2d 150, the court adopted the injury discovery rule. *Id.* at 1033 (adopting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)). This Court adopts the reasoning set forth in *Watson*, 94 F. Supp. 2d at 1032-34, and holds that the injury discovery rules in the proper statue of limitations rule for a RICO claim. The court further notes that the injury discovery rule is consistent with the Eighth Circuit's emphasis that civil RICO claims are based in fraud: "In fraud-based actions, it is well-settled under federal law that the statute of limitations starts running when the plaintiff discovers (or reasonably should have discovered) the underlying facts relevant to his claim." *Granite Falls Bank*, 924 F.2d at 153.

The First, Second, Fourth, Fifth, Seventh, and Ninth Circuits follow the injury discovery rule. *See Grimmett*, 75 F.3d at 510; *Rodriguez v. Banco Cent.*, 917 F.2d 664, 665-68 (1st Cir.

1990); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988); *Poachontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987); *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1256 (5th Cir. 1986); *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1464-65 (7th Cir. 1992).[1] District courts within the Eighth Circuit have also adopted the injury discovery rule. *See, e.g.*, *Watson*, 94 F. Supp. 2d at 1033 (adopting the injury discovery rule); *Bendzak v. Midland Nat. Life Ins. Co.*, 440 F. Supp. 2d 970, 979-80 (S.D. Iowa 2006) (same); *Misischia v. St. John's Mercy Health Sys.*, No. 4:04CV1161CEJ, 2005 WL 1875035, at *7 (E.D. Mo. Aug. 5, 2005) (same).

The injury discovery rule has two components. "First, the civil RICO limitations period 'begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.'" *Grimmett*, 75 F.3d at 510 (quoting *Poachontas Supreme Coal*, 828 F.2d at 220). "[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Bendzak*, 440 F. Supp. 2d at 980 (citing *Rotella*, 528 U.S. at 555). "The discovery rule employs both a subjective and an objective inquiry. The court must ask whether the plaintiff actually knew of her injury, and also, using a reasonable person standard, whether she should have known." *Id.* at 979 (citing *Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 896 (8th Cir. 1997)); *see also Grimmett*, 75 F.3d at 510, 512 (reasoning that "[t]he plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run" and "a plaintiff's cause of action can accrue before he discovers all elements of the

---

[1] The injury occurrence rule is the lesser-known rule that was essentially created by Justice Scalia in his concurring opinion in *Kleher*, 521 U.S. at 197-201 (Scalia, J. concurring). Batista, Civ. RICO Prac. Manual at § 4.13. It appears that no circuit has adopted the injury occurrence rule.

cause of action exist." (citations omitted)).

"The second part of the 'injury discovery' rule is the 'separate accrual rule,' which provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett*, 75 F.3d at 510 (citing *Bankers Trust*, 849 F.2d at 1103). But " 'non-independent injuries will not cause a new limitations period to accrue.' " *Misischia*, 2005 WL 1875035, at *7 (quoting *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995)). A new predicate act does not necessarily create a new injury for the "separate accrual rule." *Id.* (reasoning that "[a]ll of plaintiff's alleged injuries . . . are more properly characterized as new predicate acts, rather than new injuries.").

A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself established that the claim is time-barred. *Illig*, ___ F.3d ___, 2011 WL 3820865, at *4; *see also Sanders v. Dep't of Army*, 981 F.2d 990, 991 (8th Cir. 1992) (reasoning that a Rule 12(b)(6) dismissal on the statute of limitations defense is appropriate " 'when the . . . defense clearly appears on the face of the complaint.' " (quoting *White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973))). Judicial economy supports dismissing a complaint for failure to satisfy the statute of limitations rather than requiring the defendant to file an amended answer asserting the defense. *Sanders*, 981 F.2d at 991 ("It was not necessary for the district court to require the meaningless formality of an amended answer because the government's motion to dismiss, which expressly raised the limitations issue, provided [the plaintiff] with sufficient notice." (citing *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797-98 (11th Cir. 1989))).

Before addressing each defendant's motion, the Court will address Waldner's defense to the statute of limitations argument because Waldner makes only a general argument on the

9

statute of limitations and does not address each defendant's individual claims. *See* Docket 262 at 6-8. Waldner argues that the time period for the statute of limitations began when he entered his guilty plea in his federal criminal case. Docket 262 at 6-7. This is incorrect because the statute of limitations clock began running when Waldner knew or should have known about the injury that underlies *this* cause of action, *Grimmett*, 75 F.3d at 510; *Bendzak*, 440 F. Supp. 2d at 980, not his criminal proceeding.

Alternatively, Waldner argues that the statute of limitations clock began on November 30, 2006, when he received 6,000 pages of discovery pertaining to his Minnehaha County court actions. Waldner contends that this discovery incident is one more injury in a pattern of injuries. But Waldner's argument essentially follows the "injury and pattern discovery rule," which the Supreme Court rejected in *Rotella*, 528 U.S. at 555. The statute of limitations clock begins when Waldner should have discovered the initial injury and does not "reset" every time Waldner discovers a new act that is part of the conspiracy. *See Rotella*, 528 U.S. at 558 (rejecting the injury and pattern discovery rule because such a rule would "undercut" the policies supporting RICO). Thus, the particular events that Waldner's complaint attributes to each defendant start the statute of limitations clock for that defendant. Because the analysis differs for each defendant, the court will analyze each defendant's motion to dismiss separately.

### A.   Willey, O'Brien & Hanrahan, L.C., Renee Hanrahan, Baron, Sar, Goodwin, Gill & Lohr, and Frank Baron

Defendants Willey, O'Brien & Hanrahan, L.C., Renee Hanrahan, Baron, Sar, Goodwin, Gill & Lohr, and Frank Baron, move to dismiss Waldner's claims against them because the statue of limitations bars those claims. Docket 21. Waldner alleges that these defendants violated RICO

through various actions during H&W's 2002 bankruptcy proceeding. *See* Docket 1 at ¶¶ 54-85 (describing Waldner's allegations against these defendants and stating that these actions occurred during the 2002 bankruptcy proceeding ).

Assuming as true the allegations in Waldner's complaint, Waldner knew or should have known that Baron and the law firm of Baron, Sar, Goodwin, Gill & Lohr refrained from opposing Carolina Commercial's motion to stay during H&W's bankruptcy action in 2002, Docket 1 at ¶ 57, because he actively participated in H&W's bankruptcy action and should have been aware of the documents filed in that action, especially because those documents are part of the public record. Additionally, Waldner knew or should have known in 2002 that these defendants induced him to sign H&W's Statement of Financial Affairs, Docket 1 at ¶ 69, falsified entries to the bankruptcy court, Docket 1 at ¶ 70, and engaged in misleading conduct before the bankruptcy court. Docket 1 at ¶ 71. Waldner's claims against Hanrahan and Willey, O'Brien & Hanrahan, L.C. similarly allege improper conduct during the 2002 bankruptcy proceeding, specifically that these defendants knew how certain leases pertinent to issues in H&W's bankruptcy action were being mishandled by the various individuals in the alleged conspiracy. Docket 1 at ¶¶ 73-85. Waldner should have known that Hanrahan and Willey, O'Brien & Hanrahan, L.C. participated in these actions at the time that they occurred.

The first prong of the injury discovery rule is met because even if these events had not become a pattern and did not establish all elements of the RICO cause of action, Waldner subjectively knew that these events occurred in 2002 and would cause injury to him. A reasonable, objective person would also have been aware of these defendants' actions during H&W's bankruptcy action and that false documents, improper handling of leases, and the

11

defendants' actions in moving for and responding to motions occurred and that these actions could cause a financial injury. The second prong is also met because Waldner alleges no new and independent injuries involving these defendants after the close of his 2002 bankruptcy action. Thus, the civil RICO statute of limitations began to run in 2002. Waldner filed this action on May 20, 2010, which is beyond the four-year statute of limitations. Accordingly, defendants Willey, O'Brien & Hanrahan, L.C., Renee Hanrahan, Baron, Sar, Goodwin, Gill & Lohr, Frank Baron motion to dismiss (Docket 21) is granted.

**B.     Sioux Falls Trailer Sales, North American Truck & Trailer, Mid-States Acceptance Corp., Sioux Falls Kenworth, Inc., Carolina Commercial Truck Sales, LLC, Breit Law Offices, Glenn J. Boomsma, William R. Rush, Karen A. Rush, Parliman & Parliman, Brett Lovrien, Frederick Lovrien, Cadwell, Sanford, Deibert & Garry, East Vander Woude & Grant, Kerry Schmidt, Richard Long, Denton Haber, Kathy Watkins, Kathy Williams, and Marcy Thormodsgaard**

Defendants, Sioux Falls Trailer Sales, North American Truck & Trailer, Mid-States Acceptance Corp., Sioux Falls Kenworth, Inc., Carolina Commercial Truck Sales, LLC, Breit Law Offices, Glenn J. Boomsma, William R. Rush, Karen A. Rush, Parliman & Parliman, Brett Lovrien, Frederick Lovrien, Cadwell, Sanford, Deibert & Garry, East Vander Woude & Grant, Kerry Schmidt, Richard Long, Denton Haber, Kathy Watkins and Kathy Williams, move to dismiss and assert that the statute of limitations bars Waldner's claims against them. Docket 31. Marcy Thormodsgaard also moves to dismiss and argues that the statute of limitations bars Waldner's claims against her. Docket 77.[2]

---

[2] While Marcy Thormodsgaard did not file a memorandum in support of her motion to dismiss, she did join in the other defendants' brief in support of their motion to dismiss filed at Docket 32. *See* Docket 77 at 2 ("Defendant Thormodsgaard was an employee of Mid-States Acceptance Corporation. Plaintiff's claims are based solely on Defendant Thormodsgaard's

12

Waldner's claims against these defendants originate from a financing agreement between H&W and Carolina Commercial Truck Sales. H&W sold equipment to Carolina Commercial and that equipment was leased back to H&W. Waldner, as H&W's CEO and sole shareholder, executed personal and unconditional guarantees for the lease payments and entered into a demand promissory note with Carolina Commercial. Waldner also executed 180-day redemption mortgages for real property located in South Dakota and Wisconsin, which are owned by The One Stop, Inc., one of Waldner's business entities.

On June 12, 2002, H&W filed for bankruptcy in Iowa. Carolina Commercial received the bankruptcy court's permission to repossess and sell the equipment it had leased to H&W. But a deficiency remained after the equipment sale. Carolina Commercial then filed suit against Waldner in Minnehaha County in South Dakota on June 18, 2004, to recover on Waldner's personal guarantee. Five additional lawsuits were filed against Waldner in Minnehaha County by Sioux Falls Kenworth, North American Truck & Trailer, and Mid-States Acceptance, based on similar personal guarantees made by Waldner. All six of these lawsuits resulted in judgments against Waldner.

Waldner attempted to recover his assets through Lois Lex, a former employee, by a sales contract between One Stop and WIPT, Inc., a corporation owned by Lex. In that contract, Lex agreed to purchase Waldner's real property in Spink County, Iowa subject to the mortgages held by Carolina Commercial. WIPT and Lex brought an action against Carolina Commercial in

---

former employment status. Defendant Thormodsgaard joins the Brief in Support of Defendants' Motion to Dismiss (Doc. 32) and Defendants' Request for Judicial Notice (Doc. 33), in support of her Motion.").

Spink County alleging invalid mortgages, slander of title, and tortuous interference with contractual business relations. The state court dismissed all of plaintiffs' claims at the summary judgment stage. WIPT and Lex moved to consider whether they could dispute the amount owed under the equipment lease agreement and whether the judgment entered by the Minnehaha County court was final. The Spink County court responded that the doctrine of res judicata precluded WIPT and Lex from relitigating the amount owed under the lease.

Waldner argues that because Carolina Commercial failed to provide an advance payment on a lease and fund a promissory note, that H&W was forced into bankruptcy. Docket 1 at ¶¶ 3, 4. Brett Lovrien then "filed several requests for relief and claims in the bankruptcy proceedings, resulting in Defendant Carolina Commercial's repossession of all 757 pieces of H&W's rolling stock." Docket 1 at ¶¶ 3-5.

The first prong of the injury discovery rule is met because Waldner subjectively knew about all of the actions that these defendants committed when they occurred in 2002 and 2003 and that these actions could cause him injury. For example, Waldner knew in 2002 that Carolina Commercial neither made an advance payment on the lease nor funded the promissory note. Waldner also knew about Lovrien's requests, which he made during H&W's 2002 bankruptcy action. Moreover, in 2004, Carolina Commercial, Sioux Falls Kenworth, North American Truck & Trailer, and Mid-States Acceptance brought six separate actions in Minnehaha County to collect on personal guarantees from Waldner. Waldner claims that these defendants' actions during that lawsuit also contributed to the RICO conspiracy. *See* Docket 1 at ¶¶ 9-10. Thus, at a minimum, Waldner knew or should have known about the facts giving rise to the injury in 2004, which starts the statute of limitations clock. Prong two is also met because Waldner alleges no

14

new and independent injuries involving these defendants after the close of H&W's 2002

bankruptcy action and the 2004 state court actions involving Waldner.

Because the statute of limitations began to run in 2002 and, at the latest in 2004, Waldner

has violated the four-year statute of limitations. Accordingly, Sioux Falls Trailer Sales, North

American Truck & Trailer, Mid-States Acceptance, Sioux Falls Kenworth, Carolina Commercial,

Breit Law Offices, Glenn Boomsma, William Rush, Karen Rush, Parliman & Parliman, Brett

Lovrien, Frederick Lovrien, Cadwell, Sanford, Deibert & Barry, East Vander Woude & Grant,

Kerry Schmidt, Richard Long, Denton Haber, Kathy Watkins, and Kathy Williams motion to

dismiss (Docket 31) and Marcy Thormodsgaard's motion to dismiss (Docket 77) are granted.

**C.      Eide Bailly LLP; Fishback Financial and First Bank & Trust; PACCAR, Inc.; McGladrey & Pullen LLP; Utility Trailer Sales of Central California, Inc.; Utility Trailer Manufacturing Co.**

Defendants Eide Bailly LLP; Fishback Financial and First Bank & Trust; PACCAR, Inc.;

McGladrey & Pullen LLP; and Utility Trailer Sales of Central California, Inc., move to dismiss

Waldner's claims against them because the statute of limitations bars Waldner's claims. *See*

Dockets 34, 39, 60, 72, and 113. Waldner alleged identical claims against these defendants.

Docket 1 at ¶¶ 209-213. Defendant Utility Trailer Manufacturing Co. moves for judgment on the

pleadings under Rule 12(c), Docket 215, and argues that Waldner's complaint is time-barred by

the statute of limitations. Docket 216 at 11.

Waldner alleges that these defendants did periodic audits of North American Truck &

Trailer, and, that during the audits, these defendants "became aware that Carolina and Mid-States

had fraudulently doubled-financed lease contracts and double-sold equipment contracts with

15

banks and lending institutions . . . ." Docket 1 at ¶ 210. Waldner further alleges that these

defendants knew about the conspiracy and agreed to join the conspiracy by providing the

necessary support to execute various aspects of the conspiracy. Docket 1 at ¶¶ 209-213. The

actions that Waldner attributes to these defendants occurred in 2001 and 2002. Docket 1 at ¶¶ 9-

10, 49-21, 57, 209-213.

  The first prong of the injury discovery rule is met because Waldner subjectively knew

about problems with the leases in 2002 because those leases were at issue in H&W's 2002

bankruptcy action. A reasonable person also would have known about such serious issues about

the leases because the lease were discussed in open court and became part of the public record of

multiple court actions. The second prong is also met because all injuries that Waldner attributes

to these defendants occurred in 2002; Waldner alleges no new injuries attributable to any of these

defendants. Because the statute of limitations bars Waldner's claims against these defendants,

Eide Bailly's motion to dismiss (Docket 34), Fishback Financial and First Bank & Trust's motion

to dismiss (Docket 39), PACCAR's motion to dismiss (Docket 60), McGladrey & Pullen LLP's

motion to dismiss (Docket 72), Utility Trailer Sales of Central California's motion to dismiss

(Docket 113), and Utility Trailer Manufacturing's motion for judgment on the pleadings (Docker

215) are granted.

**D.**  **Freightliner of Utah d/b/a/ Warner Truck and John Hauknecht**

  Defendants Freightliner of Utah and Hauknecht move to dismiss Waldner's claim against

them and assert that the statute of limitations bars the claims. Docket 51. Waldner alleges that

these defendants knew about Carolina's bulk sale of equipment and that the equipment was part

of H&W's bankruptcy sale. Docket 1 at ¶¶ 253-255. These defendants allegedly joined the

conspiracy by participating in the sale. Docket 1 at ¶¶ 253-255.

By Waldner's own admissions in his complaint, the events leading up to Carolina's bulk sale of equipment occurred in 2002. Waldner alleges no separate injuries caused by Freightliner and Hauknecht after the 2002 equipment sale. Thus, both prongs of the statute of limitations test are met and Freightliner of Utah and John Hauknecht's motion to dismiss (Docket 51) is granted.

### E.    Curt Ewinger and Ewinger & Rice

Defendants Curt Ewinger and Ewinger & Rice move to dismiss Waldner's claims against them and argue that the statute of limitations bars those claims. Docket 187. Curt Ewinger passed away on January 20, 2010, and Ewinger & Rice appears to be sued on the sole basis that Curt Ewinger was associated with the firm. Docket 1 at ¶ 27.

Waldner alleges that these defendants participated in the conspiracy through their representation of Michael L. Walsh and Wendy L. Walsh in the Walshes' bankruptcy proceeding. Waldner alleges that Ewinger facilitated the removal of 980 Shares of Sioux Falls Trailer Sales from the Walshes' bankruptcy action. As stated on the face of Waldner's complaint, these actions occurred in 2003. Docket 1 at ¶ 241. Waldner alleges no new acts involving either Curt Ewinger or Ewinger & Rice that would serve as new injuries in his RICO claim. Because the four-year statute of limitations bars Waldner's claims against Curt Ewinger and Ewinger & Rice, these defendants' motion to dismiss (Docket 187) is granted.

### IV.    Rule 12(b)(2) and Personal Jurisdiction

Mark Geis, Peter Hueser, Mark Faris, Donald Webb, James Skrzypek, Scott Wiele, Community Bank at Winslow, Robert L. Lyvers, Terri Rose, Val Guenzler, and Cheyenne Doyle move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. Dockets 11, 13, 17, 36, 43,

17

44, and 46. Rule 12(b)(2) "permits the district court to notice a jurisdictional challenge 'at any time during the pendency of the proceedings.' " *United States v. Patton*, 309 F.3d 1093, 1094 (8th Cir. 2002) (quoting *United States v. Wolff*, 241 F.3d 1055, 1056-57 (8th Cir. 2001)).

The determination of whether the Court has personal jurisdiction over a defendant is normally a two-step analysis. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995). First, the applicable state long-arm statute, SDCL 15–7–2, must be satisfied. *Id.* Second, the court's exercise of jurisdiction must comport with due process. *Id.* But the rules differ for a civil conspiracy RICO action alleged under 18 U.S.C. § 1965. Some circuits hold that the district court has personal jurisdiction if one defendant can meet the minimum contacts rule for that forum. *See FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1098-99 (D.C. Cir. 2008) (collecting cases that require one defendant to have minimum contacts). Other circuits find general nationwide jurisdiction under § 1965. *See id.* at 1009 (collecting cases finding that § 1965 confers nationwide jurisdiction). But, at a minimum, the circuits agree that a district court has personal jurisdiction over all defendants if one defendant in the conspiracy can meet the minimum contacts requirement.

Because the Eighth Circuit has yet to address the bounds of personal jurisdiction under § 1965, this Court will apply the narrower rule. The Second Circuit has announced a two-prong rule for § 1965, which this Court adopts: (1) the district court has traditional personal jurisdiction based on the minimum contacts analysis over at least one defendant; and (2) the district court has personal jurisdiction over non-resident defendants who are alleged co-conspirators if the "ends of justice" require the court to have this jurisdiction. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71-72 (2d Cir .1998); *see also Butcher's Union Local No. 498 v. SDC Inv. Inc.*, 788

18

F.2d 535, 538 (9th Cir. 1986) (same).

Under the first prong, the Court has personal jurisdiction over a number of defendants in this action because some defendants, especially the businesses that are headquartered or incorporated in South Dakota, meet the minimum contacts analysis. Under the second prong, the "ends of justice" are met if the action is brought "where suits are normally expected to be brought. Congress has expressed a preference in §1965 to avoid, where possible, haling defendants into far flung fora." *PT United Can*, 138 F.3d at 71-72. Many defendants are domiciled in South Dakota and the majority of the remaining defendants are located in either Iowa or Minnesota. Many of the state court lawsuits at issue in this action took place in the Minnehaha County court in South Dakota. The ends of justice are served by allowing Waldner to consolidate all of his claims against these 60 defendants in one action. Thus, § 1965 extends jurisdiction to all defendants who are alleged to have participated in this conspiracy. Accordingly, Mark Geis, Peter Hueser, Mark Faris, Donald Webb, James Skrzypek, Scott Wiele, Community Bank at Winslow, Robert L. Lyvers, Terri Rose, Val Guenzler, and Cheyenne Doyle motions to dismiss pursuant to Rule 12(b)(2) (Dockets 11, 17, 36, 43, 44, and 46) are denied. But, as stated below, dismissal is appropriate on Rule 12(b)(6) grounds for Dockets 36, 43, 44, and 46.

## V.     Res Judicata

Defendants Zimmer, Duncan & Cole, LLP (ZDC), Daniel Brendtro, and Brendtro Law Offices (Brendtro) move to dismiss Waldner's claims against them for failure to state a claim. Dockets 28 and 54. Because Waldner's claims against these defendants are similar, the court will analyze the motions together. ZDC and Brendtro argue that res judicata bars Waldner's claims

19

against them. Docket 29 at 8; Docket 61 at 12.

Brendtro was the attorney of record for Sioux Falls Kenworth, SFK Leasing, Mid-states

Acceptance, Carolina Commercial, and North American Truck & Trailer in a state court action

against A. Thomas Pokela, Dawn M. Waldner, and The One Stop, Minnehaha Civ. 08-4940 (Civ.

08-4940). Brendtro, on behalf of his clients, argued that the defendants violated the uniform

fraudulent transfers act and otherwise committed fraud. Judge William J. Srstka, Jr., entered a

default judgment that enjoined the Waldners and The One Stop Inc., from transferring certain

properties, awarded a money judgment with a trial to be held on the amount of the damages at a

later date, and invalidated the corporate protections of One Stop, which allowed the creditors to

reach the company's assets. *See* Docket 30-5 (containing the order of default in Civ. 08-4940).

Brendtro further asserts that the other lawsuits filed in Minnehaha County court by various

individuals and corporations, most of whom are currently defendants in this action, were valid

actions. While Waldner claims that these judgments were fraudulently obtained, he neither filed

an answer in Civ. 08-4940 nor asserted a counterclaim to assert his present RICO claim. Instead,

as stated above, he defaulted in Civ. 08-4940.

Waldner's claims against ZDC stem from Brendtro's affiliation with that firm beginning

in February of 2009, when Brendtro began working as an associate at ZDC. The entry of default

in Civ. 08-4920 was entered when Brendtro was working at ZDC. Waldner also asserts that ZDC

conspired with others to defraud him in *Midstate Acceptance et. al. v. Westman et. al.*, Civ. 10-

1121 (Civ. 10-1121), which is currently pending in Minnehaha County court. Waldner has filed

neither an answer nor a counterclaim alleging a RICO claim in Civ. 10-1121.

Under the *Erie* doctrine (*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)), a court ordinarily

20

applies federal law when it has arising under jurisdiction. But res judicata is a matter of

substantive law. *Hillary v. Trans World Airlines*, 123 F.3d 1041, 1043 (8th Cir.1997) (citing

*Austin v. Super Valu Stores, Inc.*, 31 F.3d 615, 617 (8th Cir.1994)). When determining whether a

plaintiff's RICO claims were compulsory counterclaims in a state court action, the court applies

that state's res judicata rules. *See, e.g., Bankcard Sys., Inc. v. Miller Overfelt, Inc.*, 219 F.3d 770,

773 (8th Cir. 2000) (applying Missouri law to determine whether a RICO claim was compulsory

counterclaim in a pervious state court action); *Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir.

1997) (applying Oklahoma law to determine whether a RICO claim was compulsory

counterclaim in a previous state court foreclosure action and reasoning that "[f]ederal courts must

give to state court judgments 'the same full faith and credit . . . .' " (quoting 28 U.S.C. § 1738)).

Thus, the court will apply South Dakota substantive law on whether Waldner should have raised

the RICO claim as a compulsory counterclaim:

> A pleading shall state as a counterclaim any claim which at the time of serving the
> pleading the pleader has against any opposing party, if it arises out of the
> transaction or occurrence that is the subject matter of the opposing party's claim
> and does not require for its adjudication the presence of third parties of whom the
> court cannot acquire jurisdiction. But the pleader need not state the claim if:
>
> (1) At the time the action was commenced the claim was the subject of another
> pending action; or
>
> (2) The opposing party brought suit upon his claim by attachment or other process
> by which the court did not acquire jurisdiction to render a personal judgment on
> that claim, and the pleader is not stating any counterclaim under § 15-6-13; or
>
> (3) If the claim is not one over which the court would have jurisdiction if brought
> as an original action.

SDCL 15-6-13. The South Dakota Supreme Court has held that a counterclaim is compulsory in

any of the following four situations:

1. Are the issues of fact and law raised by the claim and the counterclaim largely the same?

2. Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?   .

3. Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

4. Is there any logical relation between the claim and the counterclaim?

*Haberer v. First Bank of S.D.*, 429 N.W.2d 62, 66 (S.D. 1988) (citing *Olawsky v. Clausen*, 212 N.W.2d 653 (S.D. 1973)). "An affirmative answer to **any one** of these standards make the counterclaim compulsory." *Id.* (emphasis added) (citing *Olawsky*, 212 N.W.2d 653).

"Harsh consequences result from the failure to plead a compulsory counterclaim. There can be no other result since the objective of the rule is the settlement of all 'logically related' disputes between the parties in a single lawsuit." *Olawsky*, 212 N.W.2d at 655 (citation omitted). The South Dakota Supreme Court has held that if a party fails to raise a compulsory counterclaim in the first action, then the doctrine of res judicata bars subsequent litigation on that claim between the parties. *See, e.g., Bank of Hoven v. Rausch*, 449 N.W.2d 263, 266-67 (S.D. 1989) ("As the issues involved in this counterclaim not only could have, but should have been raised in the first action, we hold further litigation of these issues is also barred by the doctrine of res judicata." (citation omitted)); *cf. Harrison v. Springdale Water & Sewer Com'n*, 780 F.2d 1422, 1431 (8th Cir. 1996) (reasoning that "[t]he Arkansas Supreme Court has held that the failure to plead a compulsory counterclaim is res judicata as to that claim in a subsequent action between the parties." (citing *May v. Exxon*, 512 S.W.2d 11, 12 (1974))).

Waldner claims that the various South Dakota state court actions were based in fraud and

22

that Brendtro, while at Brendtro law offices and at ZDC, knew about these fraudulent schemes and participated in the conspiracy. Waldner argues both that the evidence supporting these state court claims and Brendtro and ZDC's actions contributed to the conspiracy. There is a logical relationship between the state court actions, which claimed that Waldner owed money on various contracts, and the RICO counterclaim for conspiracy to defraud the court that Waldner could have pled in the state court actions. Furthermore, substantially the same evidence will support both the state court claims and Waldner's RICO claim, which the Minnehaha County can decide. *See Bankcard Sys.*, 219 F.3d at 773 (reasoning that the Missouri state court could have heard a RICO claim); *Fox*, 112 F.3d at 456 (reasoning that the Oklahoma state court could have heard a RICO claim). Because both situations three and four from the *Haberer* rule apply here, Waldner's RICO claim was a compulsory counterclaim for Civ. 08-4940 and Civ. 10-1121.

Regarding Civ. 10-1121, Waldner contends that the procedural process of that action "makes a claim that no Compulsory Counterclaim being Filed premature as the time for Filing, if Sufficient Grounds even exist without further investigation, has not run." Docket 262 at 24 (emphasis omitted). It appears that Waldner has sufficient time to assert a counterclaim in Civ. 10-1121 and, because the RICO claim is part of the same transaction and occurrence as the claim asserted against Waldner, the RICO claim should be filed as a compulsory counterclaim in that action.

Regarding Civ. 08-4940, Waldner argues that the attorney for Brendtro and ZDC mailed the default judgment to the incorrect address and, therefore, he was denied the opportunity to assert the compulsory RICO counterclaim. Docket 262 at 24-25. A default judgment was entered against Waldner because he failed to participate in the lawsuit and did not file an answer to the

23

complaint. An incorrect mailing after Waldner's failure to defend the action does not eliminate

South Dakota's requirement that Waldner needed to assert a compulsory counterclaim that arises

out of the same transaction and occurrence that gave rise to the complaint. The Court finds

Waldner's arguments unpersuasive and further finds that res judicata bars Waldner's claims

against Brendtro and ZDC. Accordingly, Brendtro's motion to dismiss (Docket 28) and ZDC's

motion to dismiss (Docket 54) are granted.

## VI.    Rule 12(b)(5) Service

Defendant Volvo Truck Corporation moves to dismiss pursuant to Rule 12(b)(5) and

argues that Waldner did not effectuate service as required by Rule 4. Docket 56. Federal Rule of

Civil Procedure 12(b)(5) allows a court to dismiss an action for failure to effect proper service as

required in Federal Rule of Civil Procedure 4 because "[i]f a defendant is improperly served, a

federal court lacks jurisdiction over the defendant." *Printed Media Servs., Inc. v. Solna Web, Inc.*,

11 F.3d 838, 843 (8th Cir. 1993). "[T]he party on whose behalf service of process is made has

the burden of establishing its validity when challenged . . . ." 4A Charles Alan Wright & Arthur

R. Miller, *Federal Practice and Procedure*, § 1083 (3d ed. 2002). Rule 4 is liberally construed

and courts generally hold that Rule 4 service has been made if the party upon whom service is

rendered receives notice. *Id.* But courts have "held that even though service appeared sufficient

to provide notice to the defendant, the process would not be considered validly served when the

person who received it was not an officer, a managing agent, or general agent of the defendant

corporation as required by the rule." *Id.* (discussing *United States v. Mollenhauer Labs., Inc.*, 267

F.2d 260 (7th Cir. 1959)). Rule 4 requires Waldner to have served Volvo, a corporation, either by

following state law for serving a summons or delivering a copy to an officer, a managing or

24

general agent, or any other agent authorized by law. Fed. R. Civ. P. 4(h)(1).

Waldner served a copy of the complaint against Volvo on David H. Wall, the in-house counsel for Volvo Group North America, LLC (VGNA). Docket 56-1. VGNA is a separate, independent entity from Volvo. Docket 56-1. Neither VGNA nor Volvo appointed Wall as an agent for service. Docket 56-1. Waldner does controvert Wall's affidavit. "[I]f the defendant introduces uncontroverted affidavits in support of a motion to quash service, the content of those affidavits will be deemed admitted for purposes of the motion." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1353 (3d ed. 2002). According to Wall's uncontroverted affidavit, Waldner served Wall, who is neither a registered agent for VGNA nor for Volvo and, thus, service of process on Volvo was ineffective.

Waldner argues that VGNA is a subsidiary of Volvo and, therefore, he effectively served Volvo by serving Wall at VGNA. Docket 262 at 26-27. "But absent probative evidence that the two corporations [the parent and subsidiary] are not independently operated, service on an officer of a subsidiary . . . does not effect service on the parent corporation." *Adams v. AlliedSignal Gen. Aviation Avionics*, 76 F.3d 882, 885 (8th Cir. 1996). Waldner has not met his burden to prove service was effective because he offers only speculation, and *no* probative evidence, that Volvo and VGNA are sufficiently connected so that he could effect service on Volvo through Wall at VGNA. Accordingly, Volvo's motion to dismiss for ineffective service (Docket 56) is granted.

## VII.    Failure to State a Claim

Defendants James Skrzypek, Scott Wiele, Mark Faris, Donald Webb, Peter Hueser, Timothy Mueller, Community Bank at Winslow, Robert L. Lyvers, Terri Rose, Val Guenzler,

25

Cheyanne Doyle, Terry Sutton and Sutton Law Offices, US Bancorp, and Werner Boade[3] move

to dismiss for failure to state a claim under Rule 12(b)(6). Dockets 36, 43, 44, 46, 81, 183, 189,

275, and 280. Waldner asserts a civil conspiracy RICO claim under 18 U.S.C. § 1962(c), (d)

against all defendants. To state a § 1962(c) claim, Waldner must make a four-part showing: "(1)

the existence of an enterprise; (2) conduct by the defendants in association with the enterprise;

(3) the defendants' participation in at least two predicate acts of racketeering; and (4) conduct that

constitutes a pattern of racketeering activity." *In re Sac & Fox Tribe*, 340 F.3d 749, 757 (8th Cir.

2003) (citing *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir. 1996)).

Sections (a) through (c) of 1962 are the substantive RICO statutes that prohibit certain activity.

Section (d) "renders it unlawful 'for any person to conspire' to violate subsection . . . (c) . . . to

show a RICO conspiracy in violation of § 1962(d), the plaintiff must present evidence beyond

that required to establish a right to relief under § 1962(c)." *United States v. Kehoe*, 310 F.3d 579,

587 (8th Cir. 2002) (citing *Handeen v. Lemaire*, 112 F.3d 1339, 1355 (8th Cir. 1997). "The

additional evidence required to show a RICO conspiracy 'need only establish a tacit

---

[3] Alternatively, Werner Boade moved to dismiss Waldner's claims for insufficient service of process pursuant to Rule 12(b)(5). Docket 189. Waldner attempted to effectuate service of process on defendant "Allison Boade, MD" while Dr. Boade was away from home by having a process server serve Dr. Boade's cleaning person, who is not a member of his household. After the cleaning person refused service the third time, the process service threw the complaint and summons into the foyer. That service was improper because service can only be effected on a person "who resides" in the dwelling. Fed. R. Civ. P. (e)(2)(B); *see also Polo Fashions, Inc. v. B. Bowman & Co.*, 102 F.R.D. 905, 908 (S.D.N.Y. 1984) (holding that a housekeeper who worked during the day in the defendant's home but did not live there could not accept service for the defendant because she was not "residing therein"); *Franklin Am., Inc. v. Franklin Cast Products, Inc.*, 94 F.R.D. 645, 647 (E.D. Mich. 1982) (similar). Because Rule 4 is liberally construed and a party must only receive notice of service, 4A Wright & Miller, at § 1083, the court will determine Boade's motion on Rule 12(b)(6) grounds.

understanding between the parties, and . . . may be shown wholly through the circumstantial evidence of [each defendant's] actions.' " *Id.* (quoting *Handeen*, 112 F.3d at 1355).

An enterprise, under the first element of a § 1962(c) claim, must have three essential characteristics: "A common or shared purpose, some continuity of structure and personnel, and an ascertainable structure distinct from that inherent in a pattern of racketeering." *McDonough v. Nat'l Home Ins. Co.*, 108 F.3d 174, 177 (8th Cir. 1997) (internal citations omitted). "A common or shared purpose is self-explanatory. Continuity of structure has been defined by the Eighth Circuit as 'an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc basis.' " *Rolfes v. MBNA Am. Bank N.A.*, 416 F. Supp. 2d 745, 751 (D.S.D. 2005) (quoting *United States v. Kragness*, 830 F.2d 842, 856 (8th Cir. 1987)). "The third characteristic, that of a distinct structure, requires that the common activities of the enterprise extend beyond the minimal association necessary to sustain the pattern of racketeering. That each member of a group carries on activities distinct from the pattern of racketeering is insufficient; the group as a whole must have a common link other than the racketeering activity." *McDonough*, 108 F.3d at 177 (internal citations omitted).

### A. James Skrzypek, Scott Wiele, Mark Faris, Donald Webb, Mark Geis, Peter Hueser, Timothy Mueller

While James Skrzypek, Scott Wiele, Mark Faris, Peter Hueser, and Donald Webb moved to dismiss pursuant to Rule 12(b)(2), which the court denied above, these defendants also either join the other defendants' arguments for dismissal under Rule 16(b)(6), Dockets 43, 44, and 46, or move to dismiss under Rule 12(b)(6). Docket 280. Mark Geis also moves for summary judgment and argues that no factual basis exists for Waldner's claims against him. Docket 13.

27

Timothy Mueller moves to dismiss pursuant to Rule 12(b)(6). Docket 81. Waldner's claims against these defendants stem from 2009 when Waldner was incarcerated in the same facility in Duluth, Minnesota as these defendants. Docket 1 at ¶ 258. Waldner alleges that these defendants interrupted Waldner's mail and attempted to prevent him from prosecuting this action through verbal and physical threats. Docket 1 at ¶¶ 258-260.

Waldner alleges that other members of the conspiracy contacted these defendants to persuade them to intercept Waldner's mail and threaten him. But Waldner alleges neither that these inmates had a common or shared purpose with any of the other defendants nor that a defined structure with an organizational pattern existed. Waldner alleges *no* facts to suggest that the group as a whole, or even these defendants as a group, had a common link other than the racketeering activity he argues occurred. Instead, Waldner brought suit against 60 defendants and argues that they, in some incomprehensible manner, were all connected. Because Waldner's complaint in *no way* alleges an enterprise as defined by the Eighth Circuit, his complaint cannot "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, James Skrzypek, Scott Wiele, Mark Faris, Peter Hueser, Timothy Mueller, and Donald Webb's motions to dismiss (Dockets 43, 44, 46, 81, and 280) and Mark Geis's motion for summary judgment (Docket 13) are granted.

### B.     Community Bank at Winslow, Robert L. Lyvers, Terri Rose, Val Guenzler, and Cheynee Doyle

Defendants Community Bank at Winslow and some Community Bank employees, namely Robert L. Lyvers, Terri Rose, Val Guenzler, and Cheyanne Doyle, argue that Waldner cannot sustain a RICO conspiracy claim against them. Docket 36. Waldner alleges that

Community Bank and its employees joined the conspiracy by "bleeding out" his business accounts after they honored interstate checks and wire transfers drawn on Waldner's Community Bank business accounts. Docket 1 at ¶¶ 234-239.

The first element of the § 1962(c) civil RICO conspiracy test requires an enterprise, which in turn requires a showing, among other requirements, that the enterprise has a "distinct structure." Waldner alleges *no* facts that Community Bank or its employees contacted any other defendant in this action to form an alliance or common plan to conspire against Waldner in violation of RICO. Waldner's complaint does not allege sufficient facts to show that these defendants had a common link to the other defendants beyond the alleged racketeering activities or that there was a distinct, organized scheme. Accordingly, Community Bank at Winslow, Robert L. Lyvers, Terri Rose, Val Guenzler, and Cheyanne Doyle's motion to dismiss (Docket 36) is granted.

### C.    Terry Sutton and Sutton Law Offices

In Count 38, Waldner alleges that Terry Sutton and Sutton Law Offices joined the conspiracy in 2007, when Sutton began representing the Walshes in their bankruptcy action. Docket 1 at ¶¶ 240-246. Sutton and Sutton Law Offices argue that Waldner's complaint has failed to state a valid claim against them. Docket 183.

Waldner alleges *no* facts to suggest that Sutton or Sutton Law Offices shared a common link or scheme with any other defendant to conspire against Waldner in violation of the RICO statute. Thus, Waldner's complaint does not state a plausible set of facts for him to seek relief under RICO and Terry Sutton and Sutton Law Office's motion to dismiss (Docket 183) is granted.

29

**D.     US Bancorp**

US Bancorp moves for judgment on the pleadings (Docket 275) and argues that Waldner

cannot state a claim against it. Waldner alleges that a US Bancorp employee, whom Waldner

does not identify by name, told him that some of the equipment titles that appeared in US

Bancorp Leasing and Financial's loan portfolio had possibly altered vehicle identification

numbers and lease contract numbers. Docket 1 at ¶ 115. Waldner appears to argue that US

Bancorp violated 18 U.S.C. § 2315 for forging or altering securities. Docket 1 at ¶ 122.[4]

Waldner neither argues in Count 19 nor elsewhere in his complaint that US Bancorp was

a member of an enterprise or was connected to any other defendant in any manner. Waldner has

not sufficiently pled that an enterprise existed between any defendant and US Bancorp. Thus, US

Bancorp's motion for judgment on the pleadings (Docket 275) is granted.

**E.     Werner Boade**

Dr. Werner Boade, M.D., moves to dismiss Waldner's claims pursuant to Rule 12(b)(6).

Docket 189. Dr. Boade is a shareholder of North American Truck & Trailer, Docket 1, p. ii at ¶

9. Waldner alleges that through his work with North American Truck & Trailer, Dr. Boade

conspired to partake of illegal profits. Docket 1 at ¶¶ 27-251.

Besides Dr. Boade's connection to the other shareholders of North American Truck &

Trailer, Waldner has alleged no facts to support a common link or alliance between the

defendants. His complaint does not an ascertainable structure between Dr. Boade and the other

---

[4] Waldner does not name US Bancorp in the "violation" section of Count 19, but he does list
US Bancorp in other places of Count 19. Mindful of the need to liberally construe a pro se
litigant's complaint, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir.2004), the court will construe
Count 19 as alleging that US Bancorp violated 18 U.S.C. § 2315, a RICO predicate act.

defendants that is distinct form the pattern of racketeering that he alleges against all of the defendants. Accordingly, Dr. Boade's motion to dismiss (Docket 189) is granted.

### F.     Waldner's Response

Waldner makes no arguments on how his complaint has stated a valid claim. Instead, Waldner requests that if the court finds his complaint factually insufficient to allege a RICO conspiracy action, the court should allow him to amend his complaint. Parties may amend, as a matter of course, within twenty-one days of serving a pleading, but that is not at issue here because more than twenty-one days have elapsed since Waldner filed his initial complaint. *See* Fed. R. Civ. P. 15(a)(1). Alternatively, "a party may amend its pleading only with . . . the court's leave." Fed. R. Civ. P. 15(a)(2).

The purpose of pleading under the federal rules "is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962) (rejecting the approach that, under the federal rules, "pleading is a game of skill in which one misstep by counsel may be decisive to the outcome" (internal quotations omitted)). Rule 15 furthers this purpose by declaring that "[t]he Court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his mandate is to be heeded." *Foman*, 371 U.S. at 182.

"Given the courts' liberal viewpoint towards leave to amend, it should normally be granted absent a good reason for denial." *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) (citing *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir .1989)). The district court retains discretion to grant or deny leave to amend a complaint. *Foman*, 371 U.S. at 182. The court should grant leave "[u]nless there is a good reason for denial, 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed,

31

undue prejudice to the nonmoving party, or futility of the amendment.' " *Becker v. Univ. of Neb.*, 191 F.3d 904, 907-08 (8th Cir.1999) (quoting *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992)). "Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous." *Id.* at 908 (citing *Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1256 (8th Cir.1994)).

Waldner has not filed a proper motion to amend his complaint because, instead of filing a motion to amend and attaching the proposed amendments as required by D.S.D. LR 15.1, he has only requested to amend his complaint in his response to defendants' motions. *See* Docket 262 (requesting, but not filing a separate motion, to amend the complaint). Failure to follow the local rules is reason enough to deny the motion. *See United States .v Young*, No. 92-1348, 1992 WL 202469, at *1, tab. op., 972 F.2d 355 (8th Cir. 1992) (affirming the district court's denial of a motion to amend that did not conform to the local rules).

Even assuming that Waldner did correctly move to amend his complaint, his motion is unduly delayed. The first motion to dismiss alleging Waldner's failure to comply with Rule 12(b)(6) was filed on November 1, 2010, by Brendtro and Brendtro Law Office. Docket 28. Waldner has had *almost a year* to move to amend his complaint to allege a cognizable cause of action against defendants. But Waldner did not seek to amend until August of 2011, when he responded to defendants' motions to dismiss. Docket 262. Waldner's failure to move to amend until after numerous defendants filed motions to dismiss is not only an undue delay but also suggests a dilatory motive on his part in prosecuting this action. Accordingly, Waldner's request or a motion to amend his complaint is denied. Accordingly, it is

ORDERED defendants Daniel Brendtro and Brendtro Law Office and Zimmer, Duncan

32

& Cole, LLP's motions for judicial notice (Dockets 30 and 58) are granted.

IT IS FURTHER ORDERED that the motions to dismiss by defendants Willey, O'Brien & Hanrahan, L.C., Renee Hanrahan, Baron, Sar, Goodwin, Gill & Lohr, Frank Baron; Sioux Falls Trailer Sales, North American Truck & Trailer, Mid-States Acceptance, Sioux Falls Kenworth, Carolina Commercial, Breit Law Offices, Glenn Boomsma, William Rush, Karen Rush, Parliman & Parliman, Brett Lovrien, Frederick Lovrien, Cadwell, Sanford, Deibert & Barry, East Vander Woude & Grant, Kerry Schmidt, Richard Long, Denton Haber, Kathy Watkins and Kathy Williams; Marcy Thormodsgaard; Eide Bailly; Fishback Financial and First Bank & Trust; PACCAR; McGladrey & Pullen LLP; Utility Trailer Sales of Central California; Freightliner of Utah and John Hauknecht; and Curt Ewinger and Ewinger & Rice (Dockets 21, 31, 34, 39, 51, 60, 72, 77, 113 and 187) are granted because the RICO statute of limitations bars plaintiff Roger D. Waldner's claims against these defendants.

IT IS FURTHER ORDERED that defendant Utility Trailer Manufacturing's motion for judgment on the pleadings (Docker 215) is granted because the RICO statute of limitations bars plaintiff Roger D. Waldner's claims against Utility Trailer Manufacturing.

IT IS FURTHER ORDERED that motions to dismiss defendants Peter Hueser and Mark Geis pursuant to Rule 12(b)(2) for lack of personal jurisdiction (Dockets 11 and 17) is denied because RICO expands the bounds of personal jurisdiction.

IT IS FURTHER ORDERED that defendants Brendtro and Brendtro Law Office and Zimmer, Duncan & Cole, LLP's motions to dismiss on grounds of res judicata (Dockets 28 and 54) are granted.

IT IS FURTHER ORDERED that defendant Volvo Truck Corporation's motion to

dismiss pursuant to Rule 12(b)(5) for ineffective service (Dockets 56) is granted.

IT IS FURTHER ORDERED that defendants James Skrzypek, Scott Wiele, Mark Faris, Donald Webb, Peter Hueser, Timothy Mueller, Community Bank at Winslow, Robert L. Lyvers, Terri Rose, Val Guenzler, Cheyanne Doyle, Terry Sutton and Sutton Law Office, and Werner Boade's motions to dismiss (Dockets 36, 43, 44, 46, 81, 183, 189, and 280) and defendant Mark Geis's motion for summary judgment (Docket 13) are granted for failure to state a plausible claim for relief.

IT IS FURTHER ORDERED that US Bancorp's motion for judgment on the pleadings (Docket 275) is granted for failure to state a plausible claim for relief.

IT IS FURTHER ORDERED that plaintiff Roger D. Waldner's motion to amend his complaint (Docket 262) is denied.

Dated September 2, 2011.

BY THE COURT:

/s/ Lawrence L. Piersol

LAWRENCE L. PIERSOL
UNITED STATES DISTRICT JUDGE