UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ROGER D. WALDNER, | ) | Civ. 10-4056-LLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALLISON BOADE, M.D.; | ) | |
| KAREN SNOW; | ) | |
| WARNER TRUCK CENTER OF UTAH; | ) | |
| ACTION CARRIER, INC.; | ) | ORDER GRANTING DEFENDANTS |
| MICHAEL L. WALSH; | ) | GALLEY W. SMITH, BRADLEY |
| WENDY L. WALSH; | ) | HARTKE, AND DOUGLAS HARTKE'S |
| GALLEY W. SMITH; | ) | MOTION FOR JUDGMENT ON THE |
| BRADLEY HARTKE; | ) | PLEADINGS |
| DOUGLAS HARTKE; | ) | |
| JACK MAKLER; | ) | |
| RICHARD D'MARTINI; | ) | |
| JANE DOES 1-14; | ) | |
| JOHN DOES 1-14; | ) | |
| ROBERT THOMAS MOORE; and | ) | |
| A. THOMAS POKELA, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Roger D. Waldner is an inmate at the Federal Prison Camp in Duluth, Minnesota. Docket 1 at 1. On May 20, 2010, Waldner filed a pro se lawsuit against more than sixty named defendants, alleging that defendants engaged in a broad conspiracy to defraud him in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* On September 23, 2011, after receiving and considering various dispositive motions, the Court dismissed Waldner's claims against the majority of the named defendants. Docket 281. The Court dismissed two more defendants on May 25, 2012 (Docket 344), and another defendant on March 15, 2013 (Docket 362). Waldner's claims against Galley W. Smith, Bradley Hartke, and

Douglas Hartke, however, remain. Accordingly, Smith, B. Hartke, and D. Hartke move for judgment on the pleadings (Docket 357) and assert that Waldner not only failed to state a claim upon which relief may be granted, but failed to do so in a timely manner (Docket 358). Waldner opposes the motion. Docket 360. For the reasons set forth herein, the Court grants defendants' motion for judgment on the pleadings.

## FACTUAL BACKGROUND

In the light most favorable to Waldner, the facts are as follows:

In 2002, Waldner initiated bankruptcy proceedings on behalf of H&W Motor Express Company, his solely owned corporation. *See In re H & W Motor Express Co.*, 343 B.R. 208 (Bankr. N.D. Iowa 2006). After the close of the bankruptcy proceedings, numerous creditors filed state-court lawsuits against Waldner in Iowa and South Dakota alleging that Waldner violated various contracts. In 2007, Waldner pleaded guilty to having made false statements during the federal bankruptcy proceedings. *See United States v. Waldner*, 564 F. Supp. 2d 911 (N.D. Iowa 2008). Consequently, Waldner was sentenced to ten years in prison.

The instant case arose out of a dispute between Waldner, William Rush, and their respective business entities. Rush is the majority shareholder and chief executive officer of North American Truck & Trailer, Inc. ("NATT"), and at the outset of this case, Waldner accused Rush of conspiring with a multitude of lawyers, accountants, financial institutions, corporations, and federal prisoners to defraud Waldner. Docket 9. Galley Smith, Bradly Hartke, and Douglas Hartke are three such individuals accused of conspiring with Rush to defraud Waldner. Each of these defendants worked with or for Waldner—Smith was the President of

H&W; Smith and B. Hartke served on the board of directors of H&W; and D. Hartke was a dispatcher for Solace Transfer, a company owned by Waldner. Docket 9 at ¶¶ 50–52.

Waldner alleges that Smith, B. Hartke, and D. Hartke "were former business associates with William R. Rush and the Rush Criminal Enterprise Companies prior to their meeting and become [sic] involved with Waldner." Docket 9 at ¶ 225. According to Waldner, defendants "agreed to join to 'bleed out' Waldner's business assets by falsifying checks and wire transfers[1] in interstate commerce drawn on Waldner's and H&W accounts as a apart [sic] of the Rush Criminal Enterprise Companies conspiracy to destroy H&W and Waldner." *Id.* at ¶ 227. A portion of the monies from such transactions were paid to the Rush Criminal Enterprise Companies, and some of the monies "were paid to unknown, fake, dummy persons or corporations, or accounts, set up by [Smith, B. Hartke, and D. Hartke]." *Id.* at ¶ 228. Therefore, because Smith, B. Hartke, and D. Hartke "were aware of the existence of the Rush Criminal Enterprise Companies and its plan to destroy H&W and Waldner's business reputation," Waldner asserts that defendants conspired to and did engage in a pattern of racketeering activities in violation of 18 U.S.C. §§ 1962(c) and (d). *Id.* at ¶¶ 1, 226.

## STANDARD OF REVIEW

Since defendants have not relied on materials outside the pleadings, e.g. depositions, answers to interrogatories, admissions on file, or affidavits, the Court will treat the pending motion as a motion for judgment on the pleadings. "The applicable standard of review on a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is the same as that on a

---

[1] None of the defendants had signature authority to authorize the transfer of funds from Waldner's or H&W's accounts at Community Bank in Winslow, Illinois. Docket 9 at ¶ 229.

motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Cain v. Ark. Dep't of Corr.*, No. 5:05CV00053HLJ, 2006 WL 2547401, at *1 (E.D. Ark. Sept. 1, 2006) (citations omitted); *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (noting that courts review a 12(c) motion under the same standard that governs a 12(b)(6) motion (citations omitted)). "Judgment on the pleadings is appropriate when there are no material facts to resolve and the moving party is entitled to judgment as a matter of law." *Mills v. City of Grand Forks*, 614 F.3d 495, 497–98 (8th Cir. 2010) (citation omitted). "The facts pleaded by the non-moving party must be accepted as true and all reasonable inferences from the pleadings should be taken in favor of the non-moving party." *Id.* (citation omitted). "The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Id.* (citation omitted); *see also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1371, at 276 (2004) ("Conversion . . . will not occur with regard to all matters subject to judicial notice and things that are central or integral to the nonmoving party's pleading.").

Pro se complaints, " 'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nonetheless, a pro se complaint must comply with the minimal requirements set forth in the Federal Rules of Civil Procedure, which specifically require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a pro se complaint need not contain detailed factual allegations, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544, 555 (2007). A pro se complaint must "allege facts sufficient to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The Court is not required to "supply additional facts, nor will [it] construct a legal theory that assumes facts that have not been pleaded." *Id.* (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). If the complaint does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

## DISCUSSION

"To recover in a civil suit for a violation of RICO, a plaintiff must prove: (1) that the defendant violated 18 U.S.C. § 1962; (2) that the plaintiff suffered injury to business or property; and (3) that the plaintiff's injury was proximately caused by the defendant's RICO violation." *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 894 (8th Cir. 1999) (citations omitted). In the instant case, Waldner has alleged that Smith, B. Hartke, and D. Hartke violated subsections (c) and (d) of 18 U.S.C. § 1962. Docket 1 at ¶¶ 1, 230.

Under subsection (c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To state a claim under § 1962(c), "a plaintiff must establish (1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity." *United Healthcare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir. 1996). Moreover, "the plaintiff must demonstrate that 'he has

been injured in his business or property by the conduct constituting the violation.' " *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Subsection (d) incorporates the conduct prohibited in subsection (c) by making it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]." To establish that a defendant engaged in a conspiracy to violate RICO, a plaintiff must present "additional evidence[2] that the defendant entered into an agreement to breach the statute." *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997) (citations omitted).

Defendants Smith, B. Hartke, and D. Hartke assert that they are entitled to judgment in their favor because Waldner has (1) failed to allege an "enterprise" within the meaning of § 1962(c); (2) failed to allege a continuous pattern of racketeering activity as required by § 1962(c); (3) failed to allege facts supporting a tacit understanding of the underlying § 1962 violation; and (4) failed to file his RICO claim within the applicable statute of limitations. Docket 358. The Court will address each of defendants' arguments in turn.

## I. Waldner Has Failed to Allege the Requisite Elements of a Civil RICO Claim.

To state a claim pursuant to § 1962(c), a plaintiff must first allege the existence of an enterprise. An enterprise must possess three characteristics: "[a] common or shared purpose, some continuity of structure[3] and personnel, and an ascertainable structure distinct from that

---

[2] The additional evidence required to show a RICO conspiracy " 'need only establish a tacit understanding between the parties, and . . . may be shown wholly through the circumstantial evidence of [each defendant's] actions.' " *Handeen v. Lemaire*, 112 F.3d 1339, 1355 (8th Cir. 1997) (quoting *United States v. Darden*, 70 F.3d 1507, 1518 (8th Cir. 1995)).

[3] The Eighth Circuit has defined "continuity of structure" as " 'an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc basis.' " *Rolfes v. MBNA Am. Bank N.A.*, 416 F. Supp. 2d 745,

inherent in a pattern of racketeering." *McDonough v. Nat'l Home Ins. Co.*, 108 F.3d 174, 177 (8th Cir. 1997) (internal citations omitted). To establish the third characteristic—a distinct structure—a plaintiff must show "that the common activities of the enterprise extend beyond the minimal association necessary to sustain the pattern of racketeering." *Id.* at 177 (internal citations omitted). " 'Th[e] distinct structure might be demonstrated by proof that a group engaged in a diverse pattern of crimes or that it has an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes.' " *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 770 (8th Cir. 1992) (quoting *United States v. Bledsoe*, 674 F.2d 647, 665 (8th Cir. 1982)); *see also Handeen*, 112 F.3d at 1352 ("In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation.").

Defendants argue that Waldner has failed to satisfy the enterprise requirement because he has not alleged the existence of a structure distinct from the minimal association necessary to defraud him. Docket 358 at 6–7. In response to this assertion, Waldner contends that defendants' mutual "management of Transportation Companies" links the three defendants to one another independent of the predicate acts—"their oversight and coordination of activities, family ties, and the actions taken to protect and conceal their illegal activities show a Distinct Structure of a common enterprise between these Defendants as well as other Defendants."[4]

---

751 (D.S.D. 2005) (quoting *United States v. Kragness*, 830 F.2d 842, 856 (8th Cir. 1987)).

[4] Waldner also filed a response to defendants' reply brief, wherein he further alleges that the defendants "engage in numerous activities beyond the Predicate Acts that support the

7

Docket 360 at 4. Waldner does not, however, allege facts to suggest that defendants were associated with William R. Rush and/or the Rush Criminal Enterprises for any other purpose than to defraud Waldner. It therefore appears that defendants would not be associated with Rush Criminal Enterprises were the alleged predicate acts removed from the equation. Consequently, the Court finds that Waldner has failed to establish the existence of an enterprise within the meaning of § 1962(c), and his RICO claim must fail.[5]

## II. Waldner Has Failed to Allege Facts Supporting a RICO Conspiracy.

To state a RICO conspiracy claim under § 1962(d), a plaintiff must provide evidence that defendants " 'manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes.' " *United States v. Bennett*, 44 F.3d 1364, 1374 (8th Cir. 1995) (quoting *United States v. Phillips*, 664 F.2d 971, 1012 (5th Cir. Unit B 1981)). "A civil RICO conspiracy claim under 18 U.S.C. § 1962(d) cannot survive if . . . the plaintiff has failed to allege the requisite substantive elements of RICO." *Rolfes v. MBNA American Bank N.A.*, 416 F.Supp.2d 745, 754 (D.S.D. 2005) (citation omitted). Because Waldner has failed to allege facts sufficient to support a RICO claim, he has similarly failed to allege facts sufficient to support a RICO conspiracy claim.

---

allegation of a Criminal Structure." Docket 363 at 3. More specifically, Waldner alleges that the defendants "set up whole businesses, both legitimate and fraudulent, to help conceal their theft." *Id.* "They opened Bank Accounts, engaged in Money Laundering and Money Structuring Activities, evaded State and Federal Taxes, and generally operated a RICO Criminal Enterprise in the guise of legitimate Transportation Businesses." *Id.*

[5] Because a RICO claim cannot survive absent the existence of an enterprise, the Court need not decide whether Waldner alleged a continuous pattern of racketeering activity.

## III. Waldner's RICO Claim is Time Barred.

Even if Waldner had sufficiently alleged the requisite elements of a RICO claim, his action is time barred. As the Court has previously stated, the Supreme Court has ruled that civil RICO actions are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987). Under the injury discovery rule,[6] "the civil RICO limitations period 'begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.' " *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (quoting *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987)); *see also Bendzak v. Midland Nat'l Life Ins. Co.*, 440 F.Supp.2d 970, 980 (S.D. Iowa 2006) ("The court must ask whether the plaintiff actually knew of her injury, and also, using a reasonable person standard, whether she should have known." (citation omitted)). "The second part of the 'injury discovery' rule is the 'separate accrual rule,' which provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett*, 75 F.3d at 510 (citation omitted). Non-independent injuries, however, will not result in a new limitations period. *Misischia v. St. John's Mercy Health Sys.*, No. 4:04CV1161CEJ, 2005 WL 1875035, at *7 (E.D. Mo. Aug. 5, 2005) (citation omitted).

Waldner filed this action on May 20, 2010, more than nine years after defendants began making allegedly fraudulent transfers. *See* Docket 1; Docket 360-8; Docket 360-9; Docket 360-10; Docket 360-11. Waldner argues, however, that the applicable statute of limitations on his

---

[6] The Court adopted the injury discovery rule rather than the injury occurrence rule in its Order dated September 23, 2011. Docket 281 at 7.

RICO claim against Smith, B. Hartke, and D. Hartke did not accrue until 2008 when he "[d]iscovered the nefarious doings of the Defendants." Docket 360 at 3. According to Waldner, he discovered defendants' conspiracy to defraud him when he undertook a complete audit of all checking account transactions, as requested by the bankruptcy trustee. *Id.* Prior to this audit, Waldner was apparently unable to discover irregular transactions in his checking account, so Waldner maintains that he filed this action well within the applicable statute of limitations.

The Court, however, cannot agree. The exhibits attached to Waldner's response brief as evidence of defendants' alleged wrongdoing represent the very types of information a reasonable person would have discovered well before 2008.[7] Therefore, the Court finds that the first part of the injury discovery rule dictates that the statute of limitations began to run in 2001. Secondly, although the transactions in question span a six-year period, Waldner has not provided evidence that he suffered new, independent injuries as a result of each fraudulent transfer. Consequently, the Court finds that the separate accrual rule does not apply to Waldner's action against Smith, B. Hartke, and D. Hartke. The statute of limitations in this scenario began to run in 2001, and Waldner's action is therefore time barred.

Because Waldner failed to allege the requisite elements of a civil RICO claim, and because his action is time barred, Smith, B. Hartke, and D. Hartke are entitled to judgment as a matter of law. Accordingly, it is

ORDERED that defendants' motion for judgment on the pleadings (Docket 357) is granted.

---

[7] A reasonable person would notice if, for several years, unauthorized persons were transferring large sums of money out of the person's bank account.

IT IS FURTHER ORDERED that plaintiff's requests for leave to file an amended RICO complaint are denied.

Dated this 10th day of July, 2013.

BY THE COURT:

/s/ Lawrence L. Piersol
LAWRENCE L. PIERSOL
UNITED STATES DISTRICT JUDGE

ATTEST:
JOSEPH HAAS, CLERK
BY: Summer Weinhold
DEPUTY