UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROGER D. WALDNER, | ) | Civ. 10-4056-LLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KAREN SNOW; | ) | ORDER DISMISSING CASE |
| ACTION CARRIER, INC.; | ) | |
| MICHAEL L. WALSH; | ) | |
| WENDY L. WALSH; | ) | |
| JANE DOES 1-14; | ) | |
| JOHN DOES 1-14; and | ) | |
| A. THOMAS POKELA, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Roger D. Waldner is an inmate at the Federal Prison Camp in Yankton, South Dakota. Docket 367. On May 20, 2010, Waldner filed a pro se lawsuit against more than sixty named defendants, alleging that defendants engaged in a broad conspiracy to defraud him in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Docket 9. Over the last three years and in response to various dispositive motions, the Court has dismissed Waldner's claims against all but five named defendants. See Dockets 281, 344, 362, 364. Waldner's claims against Karen Snow, Michael L. Walsh, Wendy L. Walsh, Action Carrier, Inc., and A. Thomas Pokela remain. Each aforementioned defendant filed an answer in response to Waldner's complaint. See Dockets 76, 84, 91, 93, 287. Within their respective answers, Defendants M. Walsh, W. Walsh, Action Carrier, Inc., and Pokela each alleged that Waldner failed to state a claim upon which relief may be granted. Docket 82 at ¶ 10; Docket 84 at ¶ 10; Docket 91 at ¶ 10; Docket 287 at ¶ 2. For the reasons set forth herein, the Court dismisses Waldner's action against the remaining named defendants.

## FACTUAL BACKGROUND

In the light most favorable to Waldner, the relevant facts are as follows:

In 2002, Waldner initiated bankruptcy proceedings on behalf of H&W Motor Express Company, his solely owned corporation. *See In re H & W Express Co.*, 343 B.4. 208 (Bankr. N.D. Iowa 2006). After the close of the bankruptcy proceedings, numerous creditors filed state-court lawsuits against Waldner in Iowa and South Dakota alleging that Waldner violated various contracts. In 2007, Waldner pleaded guilty to having made false statements during the federal bankruptcy proceedings. *See United States v. Waldner*, 564 F. Supp. 2d 911 (N.D. Iowa 2008). Consequently, Waldner was sentenced to ten years in prison.

The instant case arose out of a dispute between Waldner, William R. Rush, and their respective business entities. Docket 9. Rush is the majority shareholder and chief executive officer of North American Truck & Trailer, Inc. ("NATT"), and at the outset of this case, Waldner accused Rush of conspiring with a multitude of lawyers, accountants, financial institutions, corporations, and federal prisoners to defraud Waldner. *Id.* Karen Snow, Michael L. Walsh, Wendy L.Walsh, and A. Thomas Pokela are four such individuals accused of conspiring with Rush to defraud Waldner. *Id.* at ¶¶ 13, 48–49, 95, 33. Waldner has accused Action Carrier, Inc., a business owned by Michael and Wendy Walsh, of the same. *Id.* at ¶ 47.

With regard to Karen Snow, Waldner alleges that Snow was a corporate comptroller for NATT and the Rush Criminal Enterprise Companies. Docket 9 at ¶¶ 13, 219. As such, Snow allegedly "became aware of the criminal activities of the Rush Criminal Enterprise and agreed to join it by supporting its internal accounting operations and other activities while others committed the predicate acts." *Id.* at ¶ 219. Accordingly, Waldner asserts that Snow conspired to

and did engage in a pattern of racketeering activities in violation of 18 U.S.C. §§ 1962(c) and (d). *Id.* at ¶¶ 1, 220.

Waldner's allegations against Michael L. Walsh, Wendy L. Walsh, and Action Carriers, Inc. (hereinafter "the Action Carrier Defendants"), are less than clear. Liberally construed, Waldner appears to allege that the Action Carrier Defendants entered into equipment contracts that "were tainted and procured by fraudulent inducement and fraud upon the court." Docket 9 at ¶ 160. Waldner further alleges that during their respective bankruptcy proceedings, each of the Action Carrier Defendants failed to reveal to the court and their other creditors "that NATT and its subsidiaries were insiders to Action Carrier, Inc., and the Walshes[,] and that [the Action Carrier Defendants] had made insider payments to the Rush Criminal Enterprise Companies during their proceedings." *Id.* at ¶¶ 161, 242. Had the Action Carrier Defendants made the appropriate disclosures, Waldner believes such information "would have revealed that NATT and its subsidiaries share a common bank account or accounts which is [sic] tainted by proceeds from the Rush Criminal Enterprise Companies Racketeering Activities." *Id.* at ¶ 162. Furthermore, Waldner claims that the Action Carrier Defendants, through their attorney, fraudulently concealed "the removal of 980 shares of . . . a subsidiary of NATT, owned by the Walshes and valued by them at $1.3 million, from their personal bankruptcy proceedings through the Action Carrier, Inc., bankruptcy proceedings, and from there, into the Rush Criminal Enterprise." *Id.* at ¶¶ 163, 241. Had this concealment not taken place, Waldner believes "it is very likely that all, or a great part of the judgement [sic] in [the] Complaint would have been discharged." *Id.* at ¶ 165.

Lastly, with regard to A. Thomas Pokela, Waldner alleges that during the time Pokela

served as Waldner's counsel, Pokela conspired with Rush "to refrain from investigating the law in relation to the facts in the H&W bankruptcy proceedings" and with regard to various lease contracts. Docket 9 at ¶ 91. Furthermore, Waldner alleges that Pokela conspired with Rush Criminal Enterprises to "conceal[] from [Waldner] the 6,000± discovery documents until [it was] too late for Waldner or Pokela to investigate the true, correct, and complete facts behind the leases and H&W bankruptcy frauds." *Id.* at ¶ 93. With less specificity, Waldner alleges that Pokela conspired with Rush and the various attorneys associated with Rush Criminal Enterprises to conceal criminal activity from the court. *Id.* at ¶¶ 163, 196. Finally, Waldner alleges the following:

> Pokela [was] aware of the Rush Criminal Enterprise companies conspiracy and agreed to join it by using [his] legal acuity to manipulate the H&W bankruptcy proceedings in Iowa and South Dakota State Circuit Court proceedings by presentation of and allusions to Carolina's false claims of ownership of the H&W leased equipment and thereby sought to obtain, and did obtain, orders, stipulations and judgements [sic] against Waldner by means of fraud inter partes and by fraud upon the courts.

*Id.* at ¶ 222.

## STANDARD OF REVIEW

"A Court may sua sponte dismiss an action if it fails from the face of the complaint." *Wong v. Bann-Cor Mortg.*, 918 F. Supp. 2d 941, 950 (W.D. Mo. 2013) (citations omitted). "[T]he failure to give [prior] notice is not per se reversible error when it is patently obvious the plaintiff could not prevail based on the facts alleged in the complaint." *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (citations omitted). Pro se complaints, " 'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

4

Nonetheless, a pro se complaint must comply with the minimal requirements set forth in the Federal Rules of Civil Procedure, which specifically require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a pro se complaint need not contain detailed factual allegations, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pro se complaint must "allege facts sufficient to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The Court is not required to "supply additional facts, nor will [it] construct a legal theory that assumes facts that have not been pleaded." *Id.* (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). If the complaint does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

## DISCUSSION

"To recover in a civil suit for a violation of RICO, a plaintiff must prove: (1) that the defendant violated 18 U.S.C. § 1962; (2) that the plaintiff suffered injury to business or property; and (3) that the plaintiff's injury was proximately caused by the defendant's RICO violation." *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 894 (8th Cir. 1999) (citations omitted). In the instant case, Waldner has alleged that Smith, B. Hartke, and D. Hartke violated subsections (c) and (d) of 18 U.S.C. § 1962. Docket 9 at ¶¶ 1, 230.

Under subsection (c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To state a claim under § 1962(c), "a

5

plaintiff must establish (1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity." *United Healthcare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir. 1996). Moreover, "the plaintiff must demonstrate that 'he has been injured in his business or property by the conduct constituting the violation.' " *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Subsection (d) incorporates the conduct prohibited in subsection (c) by making it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]." To establish that a defendant engaged in a conspiracy to violate RICO, a plaintiff must present "additional evidence[1] that the defendant entered into an agreement to breach the statute." *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997) (citations omitted).

Civil RICO actions are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987). Under the injury discovery rule,[2] "the civil RICO limitations period 'begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.' " *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (quoting *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987)); *see also Bendzak v. Midland Nat'l Life Ins. Co.*, 440 F. Supp. 2d 970, 980 (S.D. Iowa 2006) ("The court must ask whether the plaintiff actually knew of her injury, and also, using a

---

[1] The additional evidence required to show a RICO conspiracy " 'need only establish a tacit understanding between the parties, and . . . may be shown wholly through the circumstantial evidence of [each defendant's] actions.' " *Handeen v. Lemaire*, 112 F.3d 1339, 1355 (8th Cir. 1997) (quoting *United States v. Darden*, 70 F.3d 1507, 1518 (8th Cir. 1995)).

[2] The Court adopted the injury discovery rule rather than the injury occurrence rule in its Order dated September 23, 2011. Docket 281 at 7.

6

reasonable person standard, whether she should have known." (citation omitted)). "The second part of the 'injury discovery' rule is the 'separate accrual rule,' which provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett*, 75 F.3d at 510 (citation omitted). Non-independent injuries, however, will not result in a new limitations period. *Misischia v. St. John's Mercy Health Sys.*, No. 4:04CV1161CEJ, 2005 WL 1875035, at *7 (E.D. Mo. Aug. 5, 2005) (citation omitted).

Defendants M. Walsh, W. Walsh, Action Carrier, Inc., and Pokela have alleged that Waldner's complaint fails to state a claim upon which relief may be granted. Although Defendant Snow did not make the same assertion in her answer, the Court will address the time-sensitive nature of Waldner's claim against Snow. The Court will address each of these grounds for dismissal in turn.

I. **Waldner Has Failed to Allege the Requisite Elements of a Civil RICO Claim Against M. Walsh, W. Walsh, Action Carrier, Inc., and Pokela.**

To state a claim pursuant to § 1962(c), a plaintiff must first allege the existence of an enterprise. An enterprise must possess three characteristics: "[a] common or shared purpose, some continuity of structure[3] and personnel, and an ascertainable structure distinct from that inherent in a pattern of racketeering." *McDonough v. Nat'l Home Ins. Co.*, 108 F.3d 174, 177 (8th Cir. 1997) (internal citations omitted). To establish the third characteristic—a distinct structure—a plaintiff must show "that the common activities of the enterprise extend beyond the

---

[3] The Eighth Circuit has defined "continuity of structure" as " 'an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc basis.' " *Rolfes v. MBNA Am. Bank N.A.*, 416 F. Supp. 2d 745, 751 (D.S.D. 2005) (quoting *United States v. Kragness*, 830 F.2d 842, 856 (8th Cir. 1987)).

minimal association necessary to sustain the pattern of racketeering." *Id.* at 177 (internal citations omitted). " 'Th[e] distinct structure might be demonstrated by proof that a group engaged in a diverse pattern of crimes or that it has an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes.' " *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 770 (8th Cir. 1992) (quoting *United States v. Bledsoe*, 674 F.2d 647, 665 (8th Cir. 1982)); *see also Handeen*, 112 F.3d at 1352 ("In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation.").

In the instant case, Waldner has failed to satisfy the enterprise requirement with regard to the Action Carrier Defendants and Pokela because he has not alleged the existence of a structure distinct from the minimal association necessary to defraud him. Waldner does not allege facts to suggest that defendants were associated with Rush and/or the Rush Criminal Enterprises for any other purpose than to defraud Waldner. In fact, Waldner's complaint makes it clear that the defendants were only associated with Rush and/or the Rush Criminal Enterprise insofar as they were conspiring to defraud Waldner. It therefore appears that defendants would not be associated with Rush Criminal Enterprises were the alleged predicate acts removed from the equation. Consequently, the Court finds that Waldner has failed to establish the existence of an enterprise within the meaning of § 1962(c), and his RICO claim against the Action Carrier Defendants and Pokela must fail.[4]

---

[4] Because a RICO claim cannot survive absent the existence of an enterprise, the Court need not decide whether Waldner alleged a continuous pattern of racketeering activity against these four defendants.

8

## II. Waldner Has Failed to Allege Facts Supporting a RICO Conspiracy Against M. Walsh, W. Walsh, Action Carrier, Inc., and Pokela.

To state a RICO conspiracy claim under § 1962(d), a plaintiff must provide evidence that defendants " 'manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes.' " *United States v. Bennett*, 44 F.3d 1364, 1374 (8th Cir. 1995) (quoting *United States v. Phillips*, 664 F.2d 971, 1012 (5th Cir. Unit B 1981)). "A civil RICO conspiracy claim under 18 U.S.C. § 1962(d) cannot survive if . . . the plaintiff has failed to allege the requisite substantive elements of RICO." *Rolfes v. MBNA American Bank N.A.*, 416 F. Supp. 2d 745, 754 (D.S.D. 2005) (citation omitted). Because Waldner has failed to allege facts sufficient to support a RICO claim against the Action Carrier Defendants and Pokela, he has similarly failed to allege facts sufficient to support a RICO conspiracy claim against these four defendants.

## III. Waldner's RICO Claim Against Snow is Time Barred.

Waldner filed this action on May 20, 2010. Docket 1. As the Court previously determined, Waldner subjectively knew about all actions committed by NATT when those actions occurred in 2002 and 2003. Docket 281 at 14. Waldner also knew in 2002 and 2003 that those actions could cause him injury. *Id.* The Court therefore concluded that Waldner knew or should have known about the facts giving rise to his injury in 2004. Because Waldner had not alleged new and independent injuries involving NATT after the close of H&W's 2002 bankruptcy action and the 2004 state court actions involving Waldner, the Court found that Waldner's action against NATT was time barred. *Id.* at 14–15.

Waldner's claim against Snow is wrapped up in his claim against NATT, because

Waldner has alleged that Snow conspired with the Rush Criminal Enterprises in her role as corporate comptroller for NATT. Thus, the Court finds that the first part of the injury discovery rule dictates that the statute of limitations as it relates to Waldner's action against Snow began to run in 2004. Secondly, Waldner has not alleged new and independent injuries involving Snow after the close of the 2002 and 2004 proceedings. Consequently, the Court finds that the separate accrual rule does not apply to Waldner's action against Snow. The statute of limitations in this scenario began to run in 2004, and Waldner's action against Snow is therefore time barred.

Because Waldner failed to allege the requisite elements of a civil RICO claim, and because his action is time barred, his claims against Snow, M. Walsh, W. Walsh, Action Carrier, Inc., and Pokela are dismissed. Furthermore, because John Does 1–14 and Jane Does 1–14 have not been identified or added, Waldner's claims against John Does 1–14 and Jane Does 1–14 are dismissed. Accordingly, it is

ORDERED that Waldner's claims against Michael W. Walsh, Wendy L. Walsh, Action Carrier, Inc., and A. Thomas Pokela are dismissed without prejudice for failure to state a claim upon which relief may be granted.

IT IS FURTHER ORDERED that Waldner's claims against Karen Snow are dismissed with prejudice as time barred.

IT IS FURTHER ORDERED that Waldner's claims against John Does 1–14 and Jane Does 1–14 are dismissed without prejudice.

Dated this 30th day of September, 2013.

BY THE COURT:

*[signature]*
LAWRENCE L. PIERSOL
UNITED STATES DISTRICT JUDGE

ATTEST:
JOSEPH HAAS, CLERK
BY: *[signature]* Deb Peterson
DEPUTY